7301

## JELLICO v. COMMISSIONERS OF STATE ELECTIONS FOR COUNTY OF CHARLESTON.

1. CONSTITUTIONAL LAW.—THE SUBJECT OF THE ACT, 26 STAT., 60, is prohibition and the provisions in sections 14 and 15 as to elections in counties in which dispensaries were recently in operation was intended to bring about prohibition, hence these provisions are germane to the title of the act and it is not in violation of article I, section 17, of the Constitution.

2. IBID.—SPECIAL LAWS.—THE ACT is a general law and subdivision 11 of section 34 of article III of Constitution is not applicable.
   *Is whether a general law can be made applicable in a special case a legislative or a judicial question?*

3. IBID.—This Court will not consider whether an act is constitutional at the instance of a party not affected by it.

Petition in the original jurisdiction of this Court by Thos. M. Jellico for writ of injunction against Henry W. Connor,

John H. Conlon and Wm. D. Clarke, as commissioners of State elections in and for the County of Charleston.

*Mr. Jno. P. Grace,* for petitioner. No argument furnished Reporter.

*Messrs. Huger Sinkler* and *Mendel L. Smith,* contra. *Mr. Smith* cites: *Court has no power to enjoin an election:* 10 Ency., 817; 82 Ill., 119; 61 Ill., 201; 62 Ill., 306; Hughes, 76; 44 S. C., 256; 67 Fed., 818; 4 Wall, 475; 6 Wall, 50; 154 U. S., 554; 124 U. S., 210; 37 N. E., 683; 76 Ga., 265, 270; 78 S. C., 574; Paine on Elections, sec. 940; 54 S. C., 1. *Local option election is not an invasion of property rights:* 19 Ency., 495; 78 S. C., 576. *Act is not in violation of art. III, sec. 34 of Con.:* 26 Ency., 574, 572; 76 S. C., 231; 18 S. C., 466; 74 S. C., 448; 4 S. C., 430, 530; 12 S. C., 203; 16 S. C., 47; 79 S. C., 114; 23 S. C., 427; 25 S. C., 55; 30 S. C., 1; 31 S. C., 282; 34 S. C., 357; 51 S. C., 247; 58 S. C., 415; 59 S. C., 52; 68 S. C., 149; 72 S. C., 513; 75 S. C., 427; 77 S. C., 260; 76 S. C., 331; 79 S. C., 96; 80 S. C., 127; 19 Ency., 494; 85 Ala., 226; 18 S. C., 467. *Nor does it contravene the special law provision of the Constitution:* 19 Ency., 495; 30 S. C., 363. *Nor does it deny to citizens the equal protection of the laws:* 19 Ency., 495; 18 S. C., 468.

October 5, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an application to the Court, in the exercise of its original jurisdiction, for an order enjoining the respondents from holding an election for the purpose of determining whether the dispensaries located in Charleston county should be reopened under and by virtue of the Act of 1909, the title and sections 1, 14, 15 and 16 of which are as follows:

"An act to prohibit the manufacture, sale, barter, exchange, giving away to induce trade, the furnishing at

public places or otherwise disposing of alcohol, spirituous, vinous or malt liquors or beverages, or other liquors or beverages by whatsoever name called, which, if drunk to excess, will produce intoxication, except for sale of alcohol in certain cases upon certain conditions, and except the sale of wines for sacramental purposes, and to provide penalties for the violation thereof.

Section 1. *"Be it enacted* by the General Assembly of the State of South Carolina: That all alcoholic liquors and beverages, whether manufactured within this State or elsewhere, or any mixture by whatsoever name called, which, if drunk to excess, will produce intoxication, are hereby declared to be detrimental, and their use and consumption to be against the morals, good health and safety of the State, and contraband. That it shall be unlawful for any person, firm, corporation or association within this State to manufacture, sell, barter, exchange, receive, accept, give away to induce trade, deliver, store, keep in possession in this State, furnish at public places or otherwise dispose of any spirituous, malt, vinous, fermented, brewed, or other liquors and beverages, or any compound or mixture thereof which contains alcohol and is used as a beverage, and which, if drunk to excess, will produce intoxication, except as hereinafter provided."

Sec. 14. "This act shall take effect on the first Tuesday in August, 1909 : *Provided,* That in the counties then having dispensaries an election shall be held on the third Tuesday in August, 1909, for the purpose of determining whether the dispensaries located therein shall be reopened; and such election, in each of the said counties, shall be held and conducted by the same officers and under the rules and regulations provided by law for general elections.

Sec. 15. "At such election the election commissioners for such county shall, at each voting precinct therein, provide one ballot box in which the ballots must be cast. Any person who is a qualified elector of such county may

vote in said election. Every voter who may be in favor of the sale of liquors and beverages in such counties shall cast a ballot in the box provided therefor, on which shall be printed the words: 'For sale and manufacture of alcoholic liquors and beverages;' and every voter opposed shall cast a ballot, upon which shall be printed the words: 'Against sale and manufacture of alcoholic liquors and beverages.' If a majority of the ballots cast in such election be 'For sale and manufacture of alcoholic liquors and beverages,' it shall be lawful for such liquors and beverages to be sold in said county, as hereinafter provided: *Provided,* That expense of these elections shall be borne by the State.

Sec. 16. "In case an election, as herein provided, shall result in favor of the sale of liquors and beverages, the dispensaries in each county so voting shall be reopened and conducted under the provisions of an act entitled 'An act to declare the law in reference to, and to regulate the manufacture, sale, use, consumption, possession, transportation and disposition of alcoholic liquors and beverages within the State, and to police the same,' approved the 16th day of February, 1907, and acts amendatory thereof: *Provided,* That all of the provisions and limitations of the said act, not inconsistent with this act, shall remain in full force and effect in all of the counties of this State: *Provided, further,* That in counties which shall reopen dispensaries therein, the county dispensary board and dispensers in office on June 30, 1909, shall continue to discharge their several duties as if such dispensary or dispensaries had not been closed: *Provided,* That the counties which have heretofore voted upon the question of dispensary or no dispensary, under existing or previous laws, and have no dispensary at this time, shall have the right, at any time after the expiration of four years from the last election on the liquor question, to hold an election upon the question of dispensary or no dispensary, as provided in an act entitled 'An act to declare the law in reference to, and to regulate the manufacture, sale, use,

consumption, possession, transportation and disposition of alcoholic liquors and beverages within this State, and to police the same,' approved February 16, 1907."

It is not necessary to reproduce the other sections of the act, as they do not relate to the holding of elections.

The following are the grounds upon which it is contended the act is unconstitutional:

"That your petitioner is informed, and verily believes, that the holding of such election would be illegal, unconstitutional, and utterly null and void, and without any proper warrant of law whatsoever, inasmuch as sections 14, 15 and 16 of said act are in conflict with, and repugnant to, the Constitution of the State of South Carolina in the following particulars, to wit:

"(a) All that part of section 14, after the words "This act shall take effect on the first Tuesday in August, 1909,' and all of sections 15 and 16, are in conflict with, and repugnant to, section 17 of article III of said Constitution, which is as follows: 'Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title,' because said sections are totally at variance with the subject expressed in the title of said act, it being respectfully submitted, that the plain meaning and intent of such title is to establish prohibition; whereas, under the provisions of sections 14, 15 and 16, certain counties shall have the right to abolish prohibition and reestablish, within their respective borders, dispensaries to sell alcoholic liquors and beverages.

"(b) That the provisions of section 14, above quoted, is special legislation, and in conflict with and repugnant to subdivision 11 of section 34 of article III of said Constitution, which subdivision is as follows: 'In all other cases, where a general law can be made applicable, no special law shall be enacted;' it being respectfully submitted, that the force and effect of said part of section 14 would be to require and enable certain counties in South Carolina,

within two weeks after the establishment of prohibition therein, to vote upon the question of whether or not liquor shall again be sold in such counties, while in all other counties in South Carolina the citizens and taxpayers thereof would not be permitted to vote one way or the other on such question until four years had elapsed from the time when, under other laws, they had voted upon such question, and would enable said latter counties, from time to time, indiscriminately thereafter, and at no stated or fixed intervals, to vote upon such question, while never again would the former counties be permitted to vote on the question, once it had been determined by the election of August 17th.

"(c) That said sections are repugnant and in conflict with article I, section 5 of said Constitution, which is as follows: 'The privileges and immunities of citizens of this State, and of the United States, under this Constitution, shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the law;' it being respectfully submitted, that, under the provisions of said sections, the citizen of the counties enumerated in section 14 is required to exercise his election on the question of liquor or no liquor on August 17th; whereas, the citizen of counties not referred to in said section not only is not required, but is not permitted to exercise his election on that day, and is permitted to exercise his election only at such times in the future, not earlier than four years from the date of the last election in his county, on said question, and not until, under section 2 of the ·Carey-Cothran Act, a 'petition in writing, praying for such election, signed by one-fourth of the qualified electors of such county,' has been filed with the county supervisor of such county. Furthermore, that in said latter counties such elections may, from time to time thereafter, be held under the conditions prescribed in section 2 of article 227 of the Laws of 1907."

The first ground that will be considered is, whether the act is in conflict with art. III, sec. 17 of the Constitution, which is as follows: "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The purpose of this provision is stated in Cooley's Con. Lim., pages 171-2, to be: "*First,* to prevent *hodge-podge* or 'log-rolling' legislation; *second,* to prevent surprise or fraud upon the legislature, by means of provisions in bills of which the title gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and *third,* to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.

"The generality of a title is, therefore, no objection to it, so long as it is not made a cover to legislation, incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection."

On page 175 the author also says: "There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction, whose strictness is unnecessary, to the accomplishment of the beneficial purpose for which it has been adopted."

"When an act of the legislature expresses in its title the object of the act, the title embraces and expresses any lawful means to achieve the object, thus fulfilling the constitutional injunction, that every law shall embrace but one subject, and that shall be expressed in its title." This language was used by the Court in *San Antonio* v. *Lane,* 32 Tex., 402, and adopted in *Charleston* v. *Oliver,* 16 S. C., 47, and *San Antonio* v. *Mehaffey,* 96 U. S., 315.

In *Connor* v. *Ry.,* 23 S. C., 427, the Court had under consideration the constitutionality of an act entitled "An

act to incorporate the Green Pond, Walterboro and Branch-ville Railroad Company," by which power was conferred upon the county commissioners to issue bonds in subscription to the capital stock of this railway. The act was declared to be constitutional.

In commenting on that case the Court, in *Floyd* v. *Perrin,* 30 S. C., 1, 8 S. E., 14, 2 L. R. A., 242, used this language: "The principle upon which it was held that the act was constitutional was that the authority granted to the county to subscribe to the railway was a means to achieve the object expressed in the title of the act, and, therefore, was germane to that object. So it appears to us, that declaring the township a corporate body, with power to tax in aid of the Greenville and Port Royal Railroad, was contributory to, and furnished means to achieve, the object of the act, as expressed in the title." See also *Riley* v. *Union Station Co.,* 71 S. C., 457, 51 S. E., 485; *State* v. *O'Day,* 74 S. C., 448, 54 S. E., 607; *Park* v. *Cotton Mills,* 75 S. C., 560, 56 S. E., 234; *Aycock Little Co.* v. *Ry.,* 76 S. C., 331, 57 S. E., 27; *Buist* v. *Charleston,* 77 S. C., 260, 57 S. E., 862; *State* v. *Hunter,* 79 S. C., 91, 60 S. E., 226.

The subject of the act was prohibition, and the provision for holding elections in the counties where dispensaries were in operation was intended to afford the opportunity of removing the dispensaries from every county in which prohibition was not of force, thus making it possible to bring about prohibition throughout the entire State.

It can not, therefore, be successfully contended that the provisions of the act for holding the elections mentioned in the petition were not germane to the title of the act, or that they did not afford a reasonable means of effecting prohibition within every county where prohibition did not already prevail.

We proceed to dispose of the specific objection, urged by the petitioner to the constitutionality of the act, under the foregoing provision of the Constitution.

It is contended by the petitioner's attorneys that the title clearly manifests an intention to establish prohibition, but that the body of the act confers upon certain counties the right to abolish prohibition and to reestablish dispensaries within their respective borders, for the purpose of selling alcoholic liquors and beverages.

The act must be construed in its entirety, when it will be seen that its ultimate object was to provide the opportunity to abolish the dispensaries and establish prohibition in certain counties. The fact that it provided for the closing of the dispensaries, preparatory to holding the elections, and the form in which the question was to be presented to the voters, were mere details, and, as the ultimate object of the act could be accomplished by such procedure, they will be regarded as germane to the title.

The next ground upon which the petitioner relies is, that the act is repugnant to subdivision 11, section 34, art. III of the Constitution, which is as follows: "In all other cases, where a general law can be made applicable, no special law shall be enacted."

The authorities cited in the case of *Buist* v. *Charleston*, 77 S. C., 260, 57 S. E., 862, show that whether a general law can be made applicable is a question to be decided by the legislature and not by the courts.

The last ground upon which the petitioner relies is, that sections 14, 15 and 16 are in conflict with section 5, art. I of the Constitution, in that they deny the equal protection of the laws.

We do not deem it necessary to cite authorities to show that the provisions of the act for holding elections, where dispensaries were being operated, was a reasonable classification. But we express no opinion relative to section 16, as the respondents are not proceeding to hold an election under that section; therefore, the rights of the petitioner thereunder are not involved. The rule is thus stated in Cooley's Cons. Lim., pages 196-7 (6th ed):

"Nor will a Court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. * * * The statute is assumed to be valid until some one complains whose rights it invades. *Prima facie,* and on the face of the act itself, nothing will generally appear to show that the act is not valid, and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property, or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the legislature, therefore, concurs with well established principles of law in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary inference from this position, that this ground of avoidance can be taken advantage of by those who have a right to question the validity of the act, and not by strangers."

This language is quoted by the Court with approval in *Ex parte Florence School,* 43 S. C., 11, 20 S. E., 794.

The order dismissing the petition has already been filed.

Mr. Chief Justice Jones. I concur in the main with the views expressed in the opinion of Mr. Justice Gary.

The case of *Buist* v. *Charleston,* 77 S. C., 260, shows it is not yet settled in this State that it is a legislative and not a judicial question whether a general law can be made applicable. Whether a statute complies with the mandatory provisions of the Constitution is essentially a judicial question. The act in question, however, can not be repugnant to subdiv. 11, sec. 34, art. III of the Constitution, because it is in fact not a special law, but a general law. In so far as it is prohibitive, it applies to the whole State; and in so far as it authorizes elections as to the opening of dispensaries in dispensary counties, it applies alike to all persons and counties in like situation.

MR. JUSTICE WOODS, *concurring.* I concur, except that I agree with the Chief Justice that the act is a general and not a special law, and, therefore, the section of the Constitution relating to special legislation has no application. It is, therefore, unnecessary to express any opinion as to whether it is for the Courts or the General Assembly to decide what legislation is forbidden by subdivision 11, section 34, article III, which provides: "Where a general law can be made applicable, no special law shall be enacted."